Minute Order Form (06/97)


554

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2272 | **DATE** | 1/31/2002 |
| **CASE TITLE** | Spherion Corp., et al. vs. Cincinnati Financial Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Cincinnati Financial Corporation's motion to transfer case [23-1] is granted. Defendant Cincinnati Financial Corporation's motion to dismiss or alternatively to stay the proceedings [7-1] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB - 1 2002 | 34 |
| ✓ | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | IS | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RJ | courtroom deputy's initials | 02 JAN 31 PM 3:07 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



SPHERION CORPORATION, et al., )
)
Plaintiffs, )
) No. 01 C 2272
v. )
) Judge Joan B. Gottschall
CINCINNATI FINANCIAL CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Spherion Corporation and Spherion Atlantic Enterprises LLC (collectively, "Spherion"), filed this diversity suit against defendant Cincinnati Financial Company ("CFC"), alleging breach of a computer consulting services contract. Spherion claims that CFC breached the contract by not paying fees due under the contract prior to its termination. One minute after Spherion filed this suit, CFC and several of its subsidiaries filed suit in the Southern District of Ohio against Spherion for breach of the same contract. In the present action, CFC has moved for dismissal for lack of personal jurisdiction and improper venue under Fed. R. Civ. P. 12(b)(2) and (b)(3), or, alternatively, for a stay of these proceedings. CFC has also moved for transfer of venue to the Southern District of Ohio under 28 U.S.C. § 1404(a). For the reasons set forth below, this court grants CFC's motion to transfer and denies as moot CFC's motion to dismiss or stay the proceedings.

### I. Background

CFC is an Ohio corporation with its principal place of business in Ohio. Spherion Corporation is a Delaware corporation with its principal place of business in Florida. Spherion

Atlantic Enterprises LLC is a Delaware limited liability company with its principal place of business in Florida. Spherion has offices in Oak Brook, Illinois, which oversaw at least part of its performance of the agreement. Spherion also maintained an Ohio office, which was opened specifically to work on the contract.

In 1996, CFC and its subsidiaries, collectively known as "the Cincinnati Companies," entered into an agreement with Anatec, a Michigan company, under which Anatec was to design and deliver software called the Commercial Personal Rewrite Project, or CPR Project. Anatec was a subsidiary of Norell Corporation, a Texas company, which merged in July 1999 with Interim Services, Inc. ("Interim"), a Florida company. Interim was the surviving entity and later changed its name to Spherion. Spherion administered its role in the CPR Project from its Illinois division in Oak Brook. According to CFC, the information department of its subsidiary, Cincinnati Insurance Company ("CIC"), administered the agreement on behalf of the Cincinnati Companies.

On July 18, 2000, CIC/CFC terminated Spherion, allegedly for cause. The parties attempted to negotiate their differences informally, then participated in mediation as mandated by the contract. The parties agreed during the course of mediation that either party could declare an impasse and an intent to terminate the mediation with seven days' notice. CFC did so on March 26, 2001, setting a termination date of April 2, 2001, at 12:00 p.m. Chicago time. On April 2, Spherion filed this suit, and the Cincinnati Companies filed suit against Spherion in Ohio.

## II. Personal Jurisdiction and Venue

As plaintiff, Spherion has the burden of providing sufficient evidence to establish a prima facie case of personal jurisdiction. *Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc.*, 15

F.3d 721, 724 (7th Cir. 1994). The allegations in the complaint are taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are resolved in the plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). On this record, the question of whether Spherion has met this burden is very close.

Under Illinois law, the long-arm statute permits in personam jurisdiction over a party to the extent allowed under federal due process. *See* 735 ILCS 5/2-209(c); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). Jurisdiction is constitutional if haling CFC into this court would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). The requisite minimum contacts are tantamount to conduct by which "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1986) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If defendant's contacts with the forum state are sufficiently "substantial[,] . . . continuous and systematic," personal jurisdiction may exist for a cause of action unrelated to those contacts. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952). If a nonresident defendant's contacts are not sufficient to support general jurisdiction, a defendant may still be subject to specific jurisdiction for claims arising out of or related to its purposefully directed activities within the state. *Burger King*, 471 U.S. at 472 n.15, 476. Spherion claims that this court has both specific and general personal jurisdiction over CFC.

Supported by affidavit, Spherion alleges that CFC management personnel traveled to the Chicago area on three different occasions for business purposes directly related to the goals of the CPR Project, that CFC solicited visits from and had numerous discussions with Spherion's

3

management personnel in Oak Brook, that CFC retained two consultants based in the Chicago area to perform services for a companion project to the CPR Project, and that CFC requested and approved efforts by Spherion to recruit Illinois residents to work on the CPR Project. CFC responds with its own affidavit, asserting that all of the alleged conduct was undertaken by CIC, not CFC, personnel, that the Chicago consultants were working on an unrelated project, and that any relevant contact with the Oak Brook office occurred after 1999, near the end of the CPR Project. Spherion comes back with additional declarations stating that Don Doyle, acting on behalf of CFC, engaged in telephone conferences, email correspondence, and correspondence by United States mail with Oak Brook personnel. Spherion also argues that CIC was acting as CFC's agent.

Even after resolving these factual disputes in Spherion's favor (as this court must), specific personal jurisdiction is not clear. It was Spherion, not CFC, that decided to transfer its management of the CPR Project to the Oak Brook office. Arguably, CFC did not *purposefully* direct its activities toward Illinois. *See Infiniti Div. of Nissan Motor Corp. of U.S.A. v. Gunn Infiniti, Inc.*, No. 93-C-7846, 1994 U.S. Dist. LEXIS 9675, at *6-7 (N.D. Ill. July 13, 1994) ("Gunn did not elect to business with an Illinois resident, but with a California resident which in turn chose to delegate the maintenance of the business relationship to a regional office in Illinois."); *see also Burger King*, 471 U.S. at 472 ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.") (internal quotation marks omitted); *Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). But this argument does not address Spherion's

4

allegations that, quite apart from any Oak Brook connection, CFC personnel traveled to Illinois and recruited Chicago-area consultants for contract-related purposes.

General jurisdiction is similarly murky. In addition to the project-specific contacts, Spherion cites six suits brought by CFC in Illinois since 1996 and a website through which it solicits on-line employment applications from Illinois residents. On the lawsuits, CFC counters that it was not the real party-in-interest in five and that the court in the sixth held that CFC was not subject to taxation in Illinois because, inter alia, it had not office, assets, or employees in Illinois, had conducted no business in Illinois, and was not registered to do business in Illinois. *Cincinnati Cas. Co. v. Bower*, No. 00-L-050254, at 2, 15 (Ill. Cir. Ct. 2001). Even assuming that CFC was actually a plaintiff in all six lawsuits, general personal jurisdiction on this basis alone is constitutionally uncertain. *Cf. Continental Cas. Co. v. State of New York Mortgage Agency*, No. 94-C-1463, 1994 U.S. Dist. LEXIS 13617, at *29-31 (N.D. Ill. Sept. 21, 1994) (holding that bringing 13 lawsuits constituted purposeful availment).

CFC claims that the website solicited applications for its subsidiaries, not for itself, and that it has never hired anyone through the website. By inviting viewers to submit employment applications on-line, the website apparently falls in the middle ground between sites where contracts are actually entered into and purely passive sites where information is posted. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119, 1124 (W.D. Pa. 1997). Given that CFC claims to have no employees in Illinois, there is some question as to whether the invitation was truly directed to Illinois residents. *Cf. Lasalle Nat'l Bank v. Vitro*, 85 F. Supp. 2d 857, 862 n.5 (N.D. Ill. 2000) ("The most that [the plaintiff] can say is that [the defendant's website] is targeted to the Western Hemisphere, which happens to include Illinois."); *Bensusan Rest. Corp.*

5

*v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996) (website created by Missouri nightclub was not directed at viewers in New York and did not constitute purposeful availment there), *aff'd*, 126 F.3d 25 (2d Cir. 1997). As in *Search Force, Inc. v. Data Force International, Inc.*, 112 F. Supp. 2d 771, 779 (S.D. Ind. 2000), "[n]o evidence has been produced that communication via these sites has occurred between [the defendant] and potential IT recruits or employers residing in [the forum state], let alone that any communication occurred which gave rise to a contractual or on-going business relationship between [the defendant] and a[] [forum state] resident or entity." Standing alone, the website probably does not give rise to general personal jurisdiction.

The more difficult question is whether the project-related contacts, the six Illinois lawsuits, and the website combine to establish general personal jurisdiction. Even if this court found personal jurisdiction based on the affidavits submitted thus far, in all likelihood the issue would only have been finally resolved after additional discovery and an evidentiary hearing. Fortunately, the personal jurisdiction issue is mooted by the court's conclusion that transfer to the Southern District of Ohio best serves the interest of justice. This court may transfer an action under either section 1404(a) or section 1406(a) even if it lacks personal jurisdiction over the defendant. *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). For present purposes, it suffices to observe that personal jurisdiction is a difficult question.

Venue is equally difficult and avoidable. "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought . . . in (1) a judicial district where any defendant resides . . . ." 28 U.S.C. § 1391(a). For this purpose, a corporate defendant like CFC is "deemed to reside in any jurisdiction where it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). Thus, in diversity

actions with a single corporate defendant, venue is essentially synonymous with personal jurisdiction. The issue of venue is avoidable because this court has the power to transfer an action "in the interest of justice" whether or not venue here is proper. *Id.* § 1404(a) (venue proper); *id.* § 1406(a) (venue improper); *see also CES Publ'g Corp. v. Dealerscope, Inc.*, 544 F. Supp. 656, 661 n.4 (E.D. Pa. 1982) ("[E]ven if [defendant] had persuaded me that I lacked the power to hear this action, I would still have exercised my discretion to transfer [under section 1406].").

### III. Transfer of Venue

There are two statutory bases for transferring venue. Section 1404(a) applies when venue in the transferor court is proper and states that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When venue in the transferor court is "wrong," section 1406(a) gives the court discretion to "transfer such case to any district or division in which it could have been brought," "if it be in the interest of justice." *Id.* § 1406(a). Generally, it is important to decide which section applies for several reasons: (1) if venue is improper and the court declines to transfer under section 1406, then the court must dismiss the action; (2) the standard for waiver differs between the two sections; (3) the substantive law of the transferor court applies in the transferee court when transfer occurs under section 1404; and (4) the phrase "in the interest of justice" is interpreted differently in the two sections. 17 James Wm. Moore, *Moore's Federal Practice* § 111.02[2][a] (3d ed. 2001). In this case, the distinction does not matter. *See Lasalle Nat'l Bank v. Arroyo Office Plaza, Ltd.*, No. 87-C-463, 1988 U.S. Dist. LEXIS 2025, at *12-13 (N.D. Ill. Mar. 9, 1988) (declining to decide propriety of venue because

7

court would transfer under either section 1404(a) or section 1406(a)).

First, because the court finds that transfer is appropriate under either section, the different consequences of non-transfer are unimportant. Second, waiver is not implicated here because CFC raised objections to venue in its earliest filing. Third, the contract expressly provides that the substantive law of Ohio will govern wherever contractual disputes may be heard. *See id.* at *13 n.4 (citing absence of choice of law issue in support of court's conclusion that it was not necessary to decide venue). The only remaining question is whether transfer serves "the interest of justice," as that phrase is interpreted under both sections. This court finds that it does.

### A. Section 1404(a)

In passing on a section 1404(a) motion to transfer, the district judge must consider "the convenience of parties and witnesses" and "the interest of justice" in light of all the circumstances of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). These statutory factors "are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Id.* at 219 n.3. "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* at 219-20.

The convenience of the parties tilts slightly against transfer. Spherion prefers Illinois; CFC prefers Ohio. That Spherion's lawyers are based in Chicago is entitled to little (if any) weight, but does militate slightly against transfer since the location of its counsel will presumably make it more expensive for Spherion to try the case in Ohio. *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 474 (N.D. Ill. 1979). The plaintiff's choice of forum is important, but this factor is given less weight "when the plaintiff is a non-resident of the chosen forum," or "where

8

the cause of action did not conclusively arise in the chosen forum." *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 482-83 (N.D. Ill. 1987). By virtue of the Oak Brook office, Spherion is a resident for venue purposes, but it is worth noting that both Spherion entities are Delaware companies with their principal places of business in Florida. In contrast, CFC is an Ohio company with its principal place of business in Ohio. In any event, it is far from clear that the cause of action arose in Illinois since most (perhaps all) of the performance occurred in Ohio. Spherion tries to avoid this conclusion by pointing out that its damages claim for unpaid fees arose when it was directing performance from Oak Brook, but Spherion is also seeking a declaration that it fully performed all of its contractual obligations. Before July 1999 (at least), most of the operative events took place in Ohio.

Ohio is clearly more convenient for the vast majority of witnesses. Spherion's own Rule 26(a)(1) disclosures in the Ohio action reveal that 96 of Spherion's 137 potential witnesses reside in Ohio; only five reside in Illinois. Because it is assumed that witnesses within the control of the parties will appear voluntarily in either jurisdiction, the location of non-party witnesses is more important. *See FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). Forty-four of Spherion's Ohio witnesses are not parties. And while Spherion has confirmed that a few of these witnesses would be willing to travel to Chicago, the willingness of the others is unclear. Even if they would voluntarily travel to Chicago, the additional expense and inconvenience would be substantial. On the other side of scale, Spherion provides the names of ten non-party witnesses who reside in Illinois, and only two of these assert that personal circumstances make it difficult to travel to Ohio. *See* 17 Moore, *supra*, § 111.13[1][f][iii] ("[T]he location of the majority of non-party witnesses in one of the two districts generally will

tip the balance in favor of that district . . . .").

Many more non-party witnesses reside in Ohio, but numbers alone are not dispositive. Rather, the materiality of the prospective witness testimony must be considered. *FUL Inc.*, 839 F. Supp. at 1312. CFC provides summary descriptions of the anticipated testimony of 28 of the 44 non-party witnesses who reside in Ohio. Without dwelling on the specifics of each witness, this court is convinced that many of these witnesses will provide crucial, first-hand testimony regarding performance of the contract. Spherion's list of ten Illinois witnesses is less impressive. That Spherion did not list six of these witnesses on its rule 26(a)(1) disclosure weakens its position that they are critical to the case. In addition, the declaration of Kae Parrott, a CIC executive on the CPR Project, credibly explains why David Czajka, George Mara, Jack Swenson, Ron Simon, Bill Burke, Jerry Weisner, and Stuart Emanuel are unlikely to have critical personal knowledge concerning Spherion's performance on the CPR Project. Furthermore, Spherion's references to *unnamed* consultants at Accenture and Nims Associates, Inc., are not convincing. This leaves one non-party witness, Rob Powell, but his cooperation is almost certain given that Spherion employs him as a paid consultant. On balance, the convenience of the witnesses, especially the non-party witnesses, weighs strongly in favor of transfer.

Finally, the interest of justice favors Ohio. *See Coffey*, 796 F.2d at 220 ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.") (citations omitted). Transfer serves the interest of justice by preventing two actions involving the same issues from proceeding simultaneously in different districts. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("To permit a situation in which two cases involving

precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that Section 1404(a) was designed to prevent."). The Ohio litigation involves essentially the same issues and includes more of the relevant parties. It has advanced further into discovery, but not so far as to make consolidation unfeasible. *See Coffey*, 796 F.2d at 221 ("[R]elated litigation should be transferred to a forum where consolidation is feasible.").

As explained above, the issue of whether this court has personal jurisdiction over CFC is difficult and likely to remain contested, whereas personal jurisdiction in Ohio is undisputed. Transfer to Ohio will therefore conserve judicial resources and lead to a more expeditious resolution of this lawsuit by avoiding a personal jurisdiction quagmire. *See Danuloff v. Color Ctr.*, No. 93-CV-73478-DT, 1993 U.S. Dist. LEXIS 18783, at *18-19 (E.D. Mich. Nov. 22, 1993) ("[T]he interest of justice is served when a case is transferred from a forum where there is a difficult question of personal jurisdiction to a district in which personal jurisdiction is clearly established."); *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 452-53 (W.D.N.C. 1989) (same, collecting cases); *see also Cherry Communications, Inc. v. Coastal Tel. Co.*, 906 F. Supp. 452, 455 n.4 (N.D. Ill. 1995) (same, in dicta).

### B. Section 1406(a)

Where venue is improper, transfer under section 1406(a) is an appropriate alternative to dismissal if the action "could have been brought" in the proposed transferee court and the transfer is "in the interest of justice." Venue in the Southern District of Ohio is undisputed. Transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is "time consuming" and may be "justice-defeating." *Goldlawr, Inc. v.*

11

*Heiman*, 369 U.S. 463, 467 (1972). There is no evidence here that Spherion was acting for any improper purpose by bringing suit in Illinois. *Cf. King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (per curiam) (affirming district court dismissal where plaintiff's choice of forum smacked of "bad faith and harassment"). As explained above, this is not a case where personal jurisdiction or venue was obviously wrong. *See Obermeyer v. Gillihand*, 873 F. Supp. 153, 158-59 (C.D. Ill. 1995) (where lack of personal jurisdiction not obvious, action was transferred and not dismissed). In short, no purpose would be served by requiring Spherion to start suit anew or even to simply refile its complaint as a counter-claim. *CES Publ'g*, 544 F. Supp. at 661 n.4.

## IV. Conclusion

For the reasons outlined above, CFC's motion to transfer is granted and CFC's motion to dismiss or alternatively to stay the proceedings is denied as moot.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: January 31, 2002

12